E-FILED
Tuesday, 03 August, 2021  03:34:35 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARRIE A. SLICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1355-JES-JEH |
| | ) | |
| HENRY P. SLANE, JR., as successor | ) | |
| trustee of the ROXAN SLANE | ) | |
| REVOCABLE TRUST DATED JUNE | ) | |
| 30, 1997, AS RATIFIED AND RESTATED | ) | |
| ON APRIL 3, 2009 AND JULY 21, 2015, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 4) to Dismiss, Plaintiff's Response (Doc. 9), Defendant's Reply (Doc. 13), Plaintiff's Sur-Reply (Doc. 14), Plaintiff's Motion (Doc. 15) for Leave to File Affidavit in Support of Response in Opposition to Motion to Dismiss, Defendant's Response (Doc. 16) thereto, Plaintiff's Motion (Doc. 6) to Remand, and Defendant's Response (Doc. 10). For the reasons set forth below, Plaintiff's Motion (Doc. 6) to Remand is denied, Defendant's Motion (Doc. 4) to Dismiss is denied, Plaintiff's Motion (Doc. 15) for Leave to File is granted, and the Court orders limited discovery on the issue of personal jurisdiction.

### BACKGROUND[1]

Plaintiff, Carrie Slick, initially brought this action in the Circuit Court for the Tenth Judicial Circuit of Illinois. Doc. 1-1. In her Complaint, Plaintiff brings claims against Defendant,

---

[1] The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

Henry Slane Jr., as Trustee of the Roxan Slane Revocable Trust. Plaintiff is a beneficiary under the Trust, along with her two daughters. Defendant is an individual residing in New Mexico. The Trust Agreement provides that the "law of the state in which the trust property shall from time to time have its situs for administration shall govern the validity and interpretation of the provisions of this instrument." *Id*. at 2. Plaintiff asserts, on information and belief, that the property owned by the Trust is located in and managed from Chicago, Illinois, and therefore Illinois law governs the validity and interpretation of the Trust Agreement. *Id*.

The testator of the Trust, Roxan Slane, died on December 18, 2019. She is survived by her husband, Defendant Henry Slane Jr., and by her daughter, Plaintiff, and Plaintiff's two children. Following Roxan's death, the Trustee made four payments of $4,000 each to Plaintiff using checks drawn on an account in the name of "HENRY SLANE JR TTEE ROXAN SLANE TRUST." The Trustee informed Plaintiff that the distributions would continue on a monthly basis. However, Plaintiff later received a letter dated July 17, 2020 from counsel[2] for the Trustee. That letter states no further distributions will be made from the Trust and that it is not known whether there is any property in the Trust. *Id*. at 3. Plaintiff's counsel responded to the letter, and counsel for the Trustee replied. In that reply, counsel for the Trustee asserted that Section 3.2 of the Trust Agreement does not require any distributions to Plaintiff and that Plaintiff is a remainder beneficiary without any rights to distribution of the Trust property until the surviving spouse's death. Plaintiff alleges the Trustee did not provide an adequate accounting of the Trust property at the time. *Id*.

As Plaintiff reads the Trust Agreement, upon Roxan's death, the Trustee was to pay taxes and expenses and thereafter distribute the trust property in accordance with Section 3.2. That

---

[2] Defendant engaged different counsel for this litigation.

Section provides the Trustee is to first "distribute to the surviving spouse from the trust property (including any property added by [the settlors'] Wills) the smallest pecuniary amount which will result in the least possible Federal estate tax payable by reason of our death." *Id*. at 3–4. Plaintiff alleges, upon information and belief, that no amount was required to be distributed to the surviving spouse (Defendant) because the value of Roxan's estate fell below the Federal estate tax exemption amount. Thus, pursuant to Section 3.2 of the Trust Agreement, the Trustee was to distribute the remaining Trust property in thirds to Plaintiff and her two daughters. *Id*.

Count One of Plaintiff's Complaint asserts a demand for accounting pursuant to 760 ILCS 3/813.2. In support of this claim, Plaintiff alleges that, despite her written request, the Trustee has failed to provide Plaintiff with an accounting of the assets of the Trust. *Id*. at 4. Count Two of Plaintiff's Complaint seeks a declaration as to the proper interpretation of Article III of the Trust Agreement. Plaintiff requests the Court find (a) that Section 3.2 of the Trust Agreement requires that no amount be distributed to the surviving spouse because the value of Roxan's estate fell below the Federal estate tax exemption amount; and (b) that Section 3.2 of the Trust Agreement requires that the Trust property be distributed immediately in thirds to Plaintiff and her two daughters. *Id*. at 6.

### LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in the Federal Rules of Civil Procedure 8(e). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to

relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all well-pleaded factual allegations are taken as true. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

Federal courts are courts of limited jurisdiction. Section 1332(a)(1) confers upon district courts jurisdiction to hear state law claims when complete diversity of citizenship exists between the parties: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332.

In addition to subject matter jurisdiction, the defendant must be subject to the Court's jurisdiction. The Due Process Clause requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring), thus providing "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). As such, the "plaintiff bears the burden of demonstrating personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942–45 (7th Cir. 2000). However, "[w]hen challenged at the motion to

4

dismiss stage, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction." *United States ex rel Conyers v. Kellogg, Brown & Root, Inc.*, 2015 WL 1510544 (C.D. Ill. Mar. 30, 2015) (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)). Thus, the Court takes as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in favor of the plaintiff. *Tamburo*, 601 F.3d at 700.

Where a "State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." In contrast, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum," the state is exercising 'general jurisdiction' over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 9 (1984). And a federal district court exercising diversity jurisdiction has personal jurisdiction only to the extent that the court of the state in which it sits would have personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1276 (7th Cir. 1997). Because the Illinois long-arm statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause . . . the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); 735 ILCS 5/2-209.

"The nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). In breach of contract suits, personal jurisdiction "generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state." On the other hand, "[w]here a plaintiff's claim is for an intentional tort, 'the inquiry focuses on whether

the conduct underlying the claim[ ] was purposefully directed at the forum state.'" *Felland*, 682 F.3d at 674 (quoting *Tamburo*, 601 F.3d at 702).

**DISCUSSION**

**(1) Plaintiff's Motion to Remand**

In her Memorandum in Support of Motion for Remand, Plaintiff argues the probate exception to federal diversity jurisdiction applies to the current dispute, and further argues Defendant has failed to sufficiently allege the amount in controversy exceeds the statutory minimum of $75,000. Doc. 7.

*(a) The Probate Exception to Federal Jurisdiction*

In *Marshal v. Marshall*, the Supreme Court rejected the circuit courts' expansion of the probate exception and clarified its scope:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *see also Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006).

Although acknowledging *Marshall*, Plaintiff cites only to pre-*Marshall* cases to support her argument that trust administration may fall within the probate exception where the trust is merely a "will substitute." Doc. 7 at 5 (citing *Georges v. Glick*, 856 F.2d 971, 974 (7th Cir. 1988)). Following *Marshall*, the probate exception applies in two situations. First, the probate exception precludes federal courts from entertaining proceedings to probate or annul a will or to administer a decedent's estate. Second, the probate exception precludes federal courts from assuming *in rem* jurisdiction over a *res* when a state court is already exercising jurisdiction over

6

the same *res*. In other words, a federal court may not endeavor to dispose of property that is in the custody of a state probate court. *Marshall*, 547 U.S. at 312; *Stiles v. Whalen*, No. 13 C 3516, 2013 WL 6730797, at *3 (N.D. Ill. Dec. 20, 2013).

Here, Plaintiff has not asked this Court to probate or annul a will or to administer Roxan's estate. Nor has either party represented to the Court that the property at issue is in the custody of a probate court. Accordingly, the probate exception to federal subject matter jurisdiction does not apply.

*(b) The Amount in Controversy under 28 U.S.C. § 1332*

Plaintiff also argues Defendant has failed to adequately allege the amount in controversy exceeds the $75,000 floor of § 1332. Doc. 7, at 9. This argument had some merit in July of 2020, when one of Defendant's counsel indicated in a letter that "it is unclear at this time if any assets are owned by the Trust." *Id*. at 10. However, later correspondence from Defendant's counsel identified some of the trust assets, including interest in real estate valued at $475,000 subject to a $400,000 note and at least a portion of $800,000 net proceeds from the sale of other real estate. In Defendant's Notice of Removal, Defendant estimates the value of the Trust at around $2,200,000. Putting aside for the moment the glaring issue of how counsel could previously represent to a beneficiary that the Trust, now apparently valued in the millions, might not have any assets, Defendant has adequately alleged the amount in controversy. First, the Court assumes that Defendant does not stand to gain anything by artificially inflating the value of the controversy, and the sum (the $2 million figure, not the $0 figure) appears to be made in good faith and is supported by a partial list of the major assets owned by the Trust. Second, Plaintiff has not shown a "legal certainty" that the value of the controversy is below the $75,000 threshold. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) ("Although

the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy—such as the economic effect that compliance with the law would have had on GMAC—once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is "legal certainty" that the controversy's value is below the threshold."). Plaintiff's Motion to Remand is denied.

**(2) Defendant's Motion to Dismiss**

In his Motion to Dismiss, Defendant makes two arguments. First, Defendant asserts this Court lacks personal jurisdiction over him. Second, he asserts venue is improper in the Central District of Illinois.

*(a) Personal Jurisdiction*

In support of Defendant's personal jurisdiction argument, Defendant, a resident of New Mexico, states he administers the Trust entirely from New Mexico such that the Trust has its *situs* in New Mexico. Doc. 5 at 4. Further,

> the bulk of the Trust's corpus is located in New Mexico and includes a partial interest in the settlor's home located in Albuquerque, personal property located in Albuquerque, and <u>assets in a Charles Schwab account</u>. Charles Schwab account statements are received by the Defendant at his home in Albuquerque. Aside from engaging a financial advisor in Chicago, <u>with whom Defendant has had only a handful of phone calls regarding the Trust</u>, Defendant has <u>no contacts</u> with Illinois. Defendant handed six checks to Plaintiff while she was in New Mexico, providing her monies from the Trust to assist with living expenses. The Trust is not being managed or administered from Illinois, as the Petition alleges, but is administered by Defendant from New Mexico.

Doc. 5 at 4–5 (emphasis added). Defendant again highlights these factual assertions later in his brief. *Id*. ("Here, the Defendant Trustee is not located in Illinois, <u>Trust assets are not located in or administered from Illinois</u>, the Defendant has not visited Illinois for purposes of administering or managing the Trust, the situs of the Trust is not Illinois and Illinois law does not govern the Trust's administration."). Defendant again reiterates "<u>Defendant has not sent distribution checks</u>

to Plaintiff in Illinois (the only checks she received were handed to her in New Mexico) and has had no direct communication with Plaintiff in Illinois." *Id*. at 6 (emphasis added). Defendant attached a declaration from himself in support of these factual assertions. Doc. 5-1 (stating Trustee has "exchanged no communications with Plaintiff in Illinois" and asserting he held no in-person meetings with his financial advisor in Illinois).

In her Response, Plaintiff disputes many of Defendant's factual assertions. Doc. 9. The factual basis for these disputes is found in Plaintiff's declaration, which she submitted as an exhibit to her Response. *See* Docs. 9, 9-1. Specifically, Plaintiff claims that Scott Munkvold, the Trustee's financial advisor, manages the Trust assets from his Chicago office. Additionally, since Roxan's death, Defendant and/or Munkvold directed four separate distributions to be made from the Trust's Charles Schwab account to Plaintiff as beneficiary of the Trust. The distributions were mailed from Charles Schwab's account in Northbrook, Illinois to Plaintiff's residence. Plaintiff further asserts, on information and belief, that all of the personal property of the Trust that is located in the Charles Schwab account is managed in Chicago, Illinois. Doc. 9 at 6.

Defendant filed a Reply and attached a declaration from himself in support. Docs. 13, 13-1. Therein, in direct contradiction to his earlier representations,[3] Defendant states,

> Although I engage Scott Munkvold as a financial advisor, he and I have only met in person in Illinois on two occasions over the last 17 years. Our most recent meeting in Illinois occurred in July 2020, and the subject of our conversation was my personal finances. We did not discuss the Trust or Trust administration. Prior to July 2020, Mr. Munkvold and I met in September 2018 to discuss my personal finances, but we did not discuss the Trust or Trust administration on that occasion either.

Doc. 13-1 at 2. Further, and also in direct contradiction to Defendant's earlier representation that

---

[3] *See* Doc. 5 at 4–5. ("Aside from engaging a financial advisor in Chicago, with whom Defendant has had only a handful of phone calls regarding the Trust, Defendant has no contacts with Illinois.").

"<u>Defendant has not sent distribution checks to Plaintiff in Illinois</u> (the only checks she received were handed to her in New Mexico)" (Doc. 5 at 6), Defendant now explains that four checks were mailed from Munkvold's office in Chicago to Plaintiff. Doc. 13-1 at 2. Additionally, and also seemingly in contradiction to his earlier representation[4], Defendant now states he visited Illinois in 2020 to bury Roxan and "visit family." *Id.*

In her Sur-Reply, Plaintiff points out these inconsistencies. Doc. 14. Specifically, she first notes that the initial letter she received from Defendant's New Mexico counsel stated "[t]he Trustee has asked our law firm to <u>assist Scott Munkvold in the administration</u> of the Trust." *Id.* at 2 (emphasis added). She also points out Defendant's earlier representation in his declaration, where he stated "My sole contact with Illinois is that I retrained a financial advisor, with whom I have had only a handful of telephone conversations regarding the Charles Schwab account. <u>We held no in-person meetings, and I have never travelled to Illinois for purposes of administering the trust.</u>" *Id.* (emphasis added) (citing Doc. 5-1). Based on the above, Plaintiff argues "it is clear that Scott J. Munkvold is administering the Trust from his office in Chicago, Illinois." *Id.* at 3.

Plaintiff also sought leave of court to file an affidavit in support of her Response. Docs. 15, 15-1. The affidavit of Andrea Jackson states that, as Plaintiff's neighbor, she has personally seen Defendant at Plaintiff's Illinois residence or travelling with his ex-wife through the neighborhood, on at least a weekly basis since December 3, 2020. She further states that since June of 2020, other than a brief time during the fall of 2020, Defendant has been residing with Plaintiff at her residence in Peoria, Illinois. Doc. 15-1.

---

[4] *Compare* Doc. 5 at 6 (Defendant "has had no direct communication with Plaintiff in Illinois") *with* Doc. 15-1 (affidavit of Andrea Jackson stating Defendant was visiting Plaintiff at her residence for large portions of 2020).

Defendant filed a Response to Plaintiff's request for leave. Doc. 16. Therein, Defendant

argues the affidavit "offers no facts which show that the Defendant actually resides there." *Id*. at

2.

The Court now proceeds to address Defendant's assertion that this Court lacks personal

jurisdiction over him. As summarized by another court,

> Fed.R.Civ.P. 12(b)(2) governs motions to dismiss based upon lack of personal
> jurisdiction. Under this rule, the party asserting jurisdiction shoulders the burden of
> proof, but that party need only make a prima facie showing that jurisdiction
> exists. *See Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988). A court may
> receive affidavits to determine whether personal jurisdiction exists. *Purdue
> Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).
> Once a defendant submits affidavits or other evidence to counter a plaintiff's
> assertion of jurisdiction, the burden shifts back to the plaintiff to submit affirmative
> evidence supporting jurisdiction. *Id.* at 782-83. However, the plaintiff is entitled to
> have all factual disputes arising from conflicts in the affidavits, and all undenied
> factual allegations, resolved in his or her favor. *Id.* at 782; *Saylor,* 836 F.2d at 342.

*Walker v. N. Tr. Co.*, No. 06 C 4901, 2007 WL 178392, at *2 (N.D. Ill. Jan. 18, 2007). *See also*

*Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("The plaintiff bears the burden of

establishing personal jurisdiction, but where, as here, the issue is raised on a motion to dismiss,

the plaintiff need only make a prima facie showing of jurisdictional facts. [citation omitted]. We

therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual

disputes in the affidavits in favor of the plaintiff.").

As Defendant observes, the place of administration of a trust is a relevant consideration

in the personal jurisdiction analysis. Doc. 5 at 4 (citing *Walker v. N. Tr. Co.*, No. 06 C 4901, 2007

WL 178392, at *6 (N.D. Ill. Jan. 18, 2007) ("In Illinois, the performance of a trustee in the

matter of administration of a trust is generally governed by the law of the situs-the place of

performance of active duties of a trustee."). Here, however, the Court's personal jurisdiction

analysis—including where the Trust is administered, and by whom—is stymied by Plaintiff's

lack of access to relevant discovery and the inconsistent representations of Defendant and his various counsel.

Answers to the following inquiries will likely assist the Court in its jurisdictional analysis. For instance, what are the assets of the Trust, and where are they located? Is the Trust worth nothing, as initially represented to Plaintiff (a beneficiary) by Defendant's New Mexico counsel? Or is it worth $2.2 million, as represented in the Notice of Removal? Who administers the Trust? Defendant, or his financial advisor? The answer to this question should be more than just a conclusory statement; rather, it should detail the performance of specific trust administration duties. Is there a difference between administering a trust and managing one? Given Defendant's initial inability to recall if any assets were in the Trust at all, were his discussions with Munkvold in Illinois really about his personal finances, or were his personal assets perhaps commingled with the Trust property? For all but the wealthiest individuals of the world, the existence of $2.2 million is a fact not easily forgotten.

Similarly, how could Defendant be unaware of 4 checks being mailed to Plaintiff from Chicago if he alone is responsible for managing and administering the Trust? If he was not aware of those distributions, then he has either delegated some trust administration authority to others or the checks were disbursed without the authorization of the Trustee. Where has Defendant been living for the last 24 months, Illinois or New Mexico? Why would Defendant's New Mexico counsel identify Munkvold as the administrator of the Trust if he was not working in that capacity? Finally, did Defendant's attorneys in this litigation perform an inquiry reasonable under the circumstances before making or later advocating the factual contentions identified as dubious above? *See* Fed. R. Civ. P. 11 (b) (Representations to the Court).

These are all relevant questions. The parties will have the opportunity to explain these questions and others once limited jurisdictional discovery is complete. The motion to dismiss is denied at this time. Defendant may renew his motion at the conclusion of jurisdictional discovery. Because many of the underlying factual issues will likely be pertinent to the Court's venue analysis, the Court likewise defers ruling on the issue of venue until a more robust and reliable factual record may be developed. Finally, the scope and schedule of jurisdictional discovery will be decided by Magistrate Judge Hawley.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion (Doc. 6) to Remand is denied, Defendant's Motion (Doc. 4) to Dismiss is denied, Plaintiff's Motion (Doc. 15) for Leave to File is granted, and the Court orders limited discovery on the issue of personal jurisdiction.


Signed on this 3rd day of August, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge